IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.                                                    Criminal No.: 3:20-cr-128-CWR-LGI

AARON MATTHEW RENTFROW,
    a/k/a "Mongo" (2)


**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT AARON
RENTFROW'S MOTION FOR A NEW TRIAL**

The government, acting through undersigned counsel, submits this response in opposition

to Defendant Aaron Rentfrow's Motion for a New Trial. *See* ECF No. 240. In support of its

response, the government submits the following:

**RELEVANT FACTS**

A Federal Grand Jury returned an indictment on or about September 22, 2020, charging

defendant Aaron Matthew Rentfrow (hereinafter, "Rentfrow") with Violent Crimes in Aid of

Racketeering ("VICAR") – Assault (Count One) and VICAR – Attempted Murder (Count Two).

Count One of the Indictment alleges that, on or about August 17, 2017, defendants William Glenn

Chunn (hereinafter, "Chunn"), Rentfrow, Jeremy Chad Dennis, and Johnathon Aaron Reynolds,

aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose

of gaining entrance to and maintaining and increasing position in the Aryan Circle (hereinafter

"AC"), an enterprise engaged in racketeering activity, did assault M.M. with a dangerous weapon

resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1959(a)(3) and 2.

Count Two of the indictment alleges that the defendants identified above, aided and abetted

by each other and others known and unknown to the Grand Jury, for the purpose of gaining

1

entrance to and maintaining and increasing position in the AC, an enterprise engaged in racketeering activity, did attempt to murder M.M., in violation of 18 U.S.C. §§ 1959(a)(5) and 2.

The trial for Chunn and Rentfrow, the remaining defendants in this case, began on or about September 12, 2022. *See* Docket Text for September 12, 2022.   On the afternoon of September 23, 2022, while in a bench conference, the government advised the Court and defense counsel that it had no more witnesses to call and was prepared to rest upon confirmation that all exhibits had been admitted. The Court conveyed the government's intent to formally rest, and the jury was temporarily excused for a break. During the break, both defendants advised that they did not intend to put on any evidence except for the entry of a stipulation, after which they were prepared to rest. The Court questioned each defendant concerning their right to testify or not to testify, and both defendants indicated that they did not wish to testify.

Prior to the jury being brought back into the courtroom, the Court advised the parties that it had received an unsigned note from the jury. The note read as follows:

> We (some of the members of the jury) were wondering if Chunn is incarcerated or not?
> Also…
>
> We (some of the jurors) are concerned about our safety after the trial is over + wondering if there has ever been harm to jurors anytime (days/weeks/months) after the trial has concluded? {This harm I mentioned may come from Persons in the trial or may come from associates with persons in the trial.}

Trial Exhibit C-4.

The defendants moved for a mistrial based on the jury note, arguing that the note represented the jury's inability to be impartial and indicated possible premature deliberations. The Court gave the parties until Sunday, September 25, 2022 at 5:00 p.m., to submit briefs on the issue. All parties submitted briefs by the deadline.

On or about September 27, 2022, the Court held a conference call to announce the procedure it was taking in response to the jury note. The Court informed the parties that the Court alone was going to voir dire each individual juror and inquire first as to their knowledge of the note. The response to the first inquiry would dictate further questioning.

When the trial resumed on October 3, 2022, the Court questioned each individual juror as to their knowledge of the note. Only Juror 1 indicated that he/she had knowledge of the note, as Juror 1 was the author of the note. Additionally, Juror 1 indicated that no other juror knew he/she had sent the note.   The Court questioned Juror 1 as to the basis of the note, to which Juror 1 said that he/she and Juror 2 discussed their safety concerns. They wondered if there had ever been any repercussions against jurors due to the gang having members or associates in the free world.[1] Juror 1 advised the Court that nothing specific regarding the case had been discussed and that he/she has consistently followed the Court's instructions and would continue to follow the Court's instructions, even if the Court could not answer his/her questions.

Next, the Court questioned Juror 2. When asked about the note, Juror 2 advised that he/she did not know about the note. Juror 2 advised that he/she had a limited conversation with Juror 1, and Juror 1 could have written a note. Juror 2 stated that he/she had not discussed the case. Additionally, Juror 2 indicated that he/she felt the defendants were looking at him/her and wondered if the defendants were incarcerated. Juror 2 further indicated that he/she is a nervous person in general. However, Juror 2, like Juror 1, indicated that his/her nervousness has not affected his/her ability to follow the Court's instructions, and he/she will continue to follow the Court's instructions.

---

[1] A term used to refer to a branch of the AC with non-incarcerated members.

The remaining eleven jurors[2] advised that they did not have any knowledge of the note. Furthermore, as done throughout the course of the trial, the eleven jurors indicated that they had followed and would continue to follow the Court's instructions not to discuss the case with anyone and could be fair and impartial.

After the voir dire, the parties made arguments in addition to the arguments submitted in their briefs. Upon hearing the oral arguments and reviewing the briefs, this Court denied the defendants' motion for a mistrial. As a result, the trial proceeded with both the government and defendants resting without further witness testimony. The parties presented their closing arguments, and the jury was given the jury instructions and charged as to the relevant law to begin their deliberations. Approximately, two hours later, the jury unanimously returned a verdict of guilty as to both counts against Rentfrow. *See* ECF No. 225.

On or about October 25, 2022, Rentfrow filed a motion for a new trial. *See* ECF No. 240. In his motion for a new trial, Rentfrow asserts that the convictions should be vacated and a new trial is warranted for the following reasons: 1) members of the jury engaged in misconduct; 2) the misconduct is prejudicial; and 3) the appropriate remedy is a mistrial. *See id*.

## **ARGUMENT**

Federal Rule of Criminal Procedure 33 states, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33. In the Fifth Circuit, "the generally accepted standard is that a new trial ordinarily should not be granted 'unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict.'" *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (quoting *United*

---

[2] This figure includes ten jurors and one alternate juror.

4

*States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004)). As the movant, Rentfrow bears the burden of proving to the district court that a new trial is warranted. *See United States v. Soto-Silva*, 129 F.3d 340, 343 (5th Cir. 1997) (stating that the movant bore the burden of proving to the district court that a new trial was justified). The grounds for a new trial as asserted by Rentfrow are without merit and do not rise to the level that necessitates a new trial. Therefore, Rentfrow's motion for a new trial should be denied.

1. **There is insufficient evidence of premature jury deliberations.**

It is undisputed that Juror 1 and Juror 2 discussed their safety concerns and wondered if Chunn was incarcerated. However, the note does not constitute evidence of premature deliberations. Therefore, Rentfrow's assertion that the jury engaged in misconduct when Juror 1 and Juror 2 engaged in premature deliberations is without merit.

A jury is presumed impartial unless a defendant proves otherwise. *United States v. Lee,* 966 F.3d 310, 321 (5th Cir. 2020).   A district court's denial of a motion for a mistrial based on premature deliberations is reviewed for abuse of discretion. *Id.* Moreover, a district court's "'discretion is broadest when the allegation involves internal misconduct such as premature deliberations' as opposed to 'external misconduct such as exposure to media publicity.'" *Id.* (citing *United States v. York,* 600 F.3d 347, 356 (5th Cir. 2010)). "Furthermore, there is a strong presumption that a jury will follow a court's 'wait to deliberate' instruction." *Lee,* 966 F.3d. at 322. (internal citations omitted).

In *United States v. Lee*, the Fifth Circuit addressed an allegation of premature deliberations. *See Lee*, 966 F.3d at 321. At the beginning of the trial in *Lee*, the jury was given an instruction to refrain from discussing the case even with other jurors until deliberations began. *Id.* The court also advised the jurors to refrain from forming an opinion until the conclusion of the case. *Id.*   During

5

trial, the jury sent out a note requesting clarification of the charges. *Id.* The judge interviewed each juror independently, and all jurors indicated that they had not talked about the merits of the case. *Id.* The defense moved for a mistrial, arguing, in part, that the note indicated the jury had prematurely begun to discuss the case. *Id.* The Fifth Circuit upheld the district court's denial of the motion for mistrial stating, "[i]ndeed, we have deferred to district courts in this area even when, unlike in this case, there was some evidence indicating that the jury discussed the evidence during the trial." *Id.* at 322. The court in *Lee* cited *United States v. Arriola,* 49 F.3d 727, 1995 WL 103275, at *5 (5th Cir. 1995), in which the Fifth Circuit rejected a premature deliberation appeal when an affidavit from a juror's son averred that jurors were discussing the testimony and the weight of the evidence prior to the conclusion of trial. *Id.* Accordingly, the court in *Lee* held that the defendants failed to offer any evidence to overcome the presumption of jury impartiality. *Id.*

In *United States v. York,* after the government and defense had rested but before the government's rebuttal case, the jury sent out a note requesting to hear a tape recording. 600 F.3d at 355-56. The defendant moved for a mistrial on the basis that this note was evidence of the jury's premature deliberation. *Id.* at 356. Without making any inquiries of the jury, the district court denied the motion for a mistrial. *Id.* The Fifth Circuit found that the district court had not abused its discretion in denying the motion for a mistrial without making any further inquiries of the jury, stating that "[t]he trial judge's discretion extends even to the initial decision of whether to interrogate the jurors." *Id.* at 356-57. The court found that the note did not indicate that the jury had reached any decision on disputed evidence but simply wanted more information. *Id.* at 357.

In the case before this Court, nothing in the language of the note indicates that the jury had begun deliberating on issues presented at trial, much less that they had come to any decisions. The note is arguably even less concerning than those at issue in *Lee* and *York,* as the note does not

6

reference any evidence or charges pertaining to this case. Just as in *Lee,* the defendants in this case have failed to present any evidence of premature deliberations and, accordingly, the *strong presumption* of jury impartiality must stand. *See Lee,* 966 F.3d. at 322 ("[T]here is a strong presumption that a jury will follow a court's 'wait to deliberate' instruction.").

Although the Court would not have abused its discretion by not making any inquiries of the jury, the Court, nonetheless, questioned each juror regarding their knowledge of the note, to which twelve of the thirteen jurors reported no knowledge. Furthermore, only Juror 1 and Juror 2 admitted to having a conversation regarding safety concerns and Chunn's incarceration status. Additionally, both jurors stated that this conversation was limited and did not involve facts of the case. At the conclusion of the inquiry, all jurors stated that they would follow the Court's instructions and be fair and impartial. Accordingly, Rentfrow's assertion that the jury engaged in misconduct by prematurely deliberating the case is unfounded.

2. **The defendant has failed to demonstrate any extrinsic influence and establish prejudice warranting a new trial.**

The Fifth Circuit has "afforded trial courts broader discretion in dealing with intrinsic influences due to jury misconduct than it has afforded in cases of extrinsic influences and has specifically declined to presume prejudice from intrinsic influences because it would hamper the judge's discretion." *United States v. Nieto*, 721 F.3d 357, 360-370 (5th Cir. 2013) (citing *United States v. Sotelo,* 97 F.3d 782, 796 (5th Cir. 1996)).  Further, "[t]he procedures used to investigate allegations of juror misconduct and the decision as to whether to hold an evidentiary hearing are matters within the sound discretion of the district court." *United States v. Kelley,* 140 F.3d 596, 608 (5th Cir. 1998) (citing *United States v. Jobe,* 101 F.3d 1046, 1058 (5th Cir. 1996)) (internal

quotations omitted), *abrogated on other grounds by United States v. Ochoa-Gomez*, 777 F.3d 278 (5th Cir. 2015).

"In any trial, there is an initial presumption that the jury is impartial." *Kelley,* 140 F.3d at 608.   This presumption can only be overcome by evidence that an extrinsic factual matter *actually* tainted the jury's deliberations. *See id.* (emphasis added). Only upon such a showing does a defendant receive a rebuttable presumption that entitles him to a new trial. *See id*. However, the presumption can be overcome by the government showing that any breach to the jury was harmless. *See id.* A new trial is only warranted when there is a colorable showing that an extrinsic factual matter tainted the jury's deliberations. *See id; see also United States v. O'Keefe,* 722 F.2d 1175, 1179 (5th Cir. 1983). However, Rentfrow has failed to demonstrate that the jury was influenced by any extrinsic factors.

In *United States v. Nieto*, the Fifth Circuit upheld a district court's decision denying a defendant's motion for mistrial based on the jury's expression of safety concerns during trial. 721 F.3d 357, 371 (5th Cir. 2013). In *Nieto,* after five days of trial, a juror, identified as Juror D.D., expressed concerned for the safety of her family and asked what precautions were being taken for protective purposes. *Id*. at 364. The trial judge addressed the jury advising them that they did not need to be concerned for their safety and that they should decide this case based solely on the facts that were heard in the courtroom. *Id.* Subsequently, Juror D.D.'s husband reached out to a friend who then contacted the police concerning the safety of Juror D.D. *Id.* at 365. Upon agreement with the parties, the judge spoke ex parte with each juror individually, including the alternates. *Id.* The judge reported back "… that two indicated they had expressed some anxiety to their spouses at first but were no longer concerned, many had not talked to anyone and did not have any concerns, and all said they could decide the case based solely on the evidence and law after closing

8

arguments." *Id.* Ultimately, the judge dismissed Juror D.D., the juror who initially expressed safety concerns, and replaced her with an alternate. *Id.* The defendants moved for a mistrial, which was denied by the district court. *Id*.

The defendants appealed the denial of their motion for a mistrial, in part, taking issue with the fact "… that several jurors expressed anxiety about the case and stated they had, to an extent, talked about the case, and that two indicated they had formed some opinions even though the interviews occurred before closing arguments." *Id.* at 370. The Fifth Circuit noted that "[c]ontrary to the defendants' unsupported assertion that the influence here was 'decidedly extrinsic,' only the actions of Juror D.D.'s husband can arguably be characterized as extrinsic. The rest of the issues the defendants challenge are intrinsic, such as the claim that jurors had made up their mind prior to deliberations." *Id.* (citing *United States v. Sotelo,* 97 F.3d at 796 (5th Cir. 1996)). In affirming the district court's denial of the defendants' motion for mistrial, the court stated:

> Here the district court instructed jurors to decide the case based on the evidence and law, and jurors are presumed to follow the instructions given them by the court. Though the jurors indicated some anxiety and intrinsic misconduct to the judge, with the possible exception of Juror D.D., none were so extreme that the district court's judgment should be considered an abuse of discretion. Accordingly, we hold the district court did not abuse its discretion in denying the defendants' motions for a mistrial.

*Id.* at 371 (internal citations omitted).

In the case at hand, as previously stated, there is no evidence that Juror 1 and Juror 2 engaged in premature deliberations. Furthermore, both jurors informed the Court that they had not discussed the specifics of the case. Thus, there is only evidence that Juror 1 and Juror 2's conversation was limited to their safety concerns. The Fifth Circuit and other circuits have continuously found that a jury's expression of safety concerns is not grounds for a new trial. *See United States v. Kelley*, 140 F.3d at 608-609 (finding no evidence of outside or extrinsic influence

9

where jury indicated that it was hesitant to return a verdict because some members were afraid for their safety and the safety of their families); *Garcia v. Andrews*, 488 F.3d 370, 376 (6th Cir. 2007) (a juror's own subjective fear is not extrinsic to trial); *United States v. Maye*, 241 Fed. App'x 638, 641-42 (11th Cir. 2007) (jurors' discussion about fear of defendants not inappropriate where there was no evidence that fear lead them to form an opinion as to guilt or innocence or that the jurors had been influenced by outside evidence); *United States v. Thornton,* 1 F.3d 149, 155-56 (3d Cir. 1993) (jurors' general apprehensiveness did not indicate extraneous influences). Notwithstanding the lack of evidence demonstrating premature deliberations in this case, the alleged premature deliberations would nonetheless be considered intrinsic. *See Sotelo*, 97 F.3d at 796 (juror's announcement that he had determined the defendant was guilty prior to conclusion of trial is considered an intrinsic influence).

In support of his assertion that the jury's note about safety concerns was prejudicial, Rentfrow cites the Seventh Circuit case, *United States v. Blitch*, 622 F.3d 658 (7th Cir. 2010). In *Blitch*, the defendants asserted that their right to a fair and impartial jury was violated when the court refused to impanel a new venire or investigate bias when "prospective jurors were discussing their safety fears in light of the defendants' access to their personal information including their names, occupations, and ages and occupations of their children." *Id*.   The Seventh Circuit agreed. *Id*. at 671 (finding the inquiry or lack thereof into in the jurors' safety concerns inadequate). The Seventh Circuit noted that an identical issue had arisen with the first panel of jurors, in which the court engaged in an individual inquiry of each juror[3] and subsequently declared a mistrial. *Id*. at 665.

---

[3] The court in *Blitch* questioned four of the twelve jurors. *Blitch*, 622 F.3d at 666.

However, in this case, the Court did investigate the safety concerns and questioned each juror regarding their knowledge of the note and ability to be impartial and follow the Court's instructions. Moreover, in an effort to determine whether any extrinsic influence had caused any prejudice, the Court had the ability to observe not only the jurors' responses but their demeanor. *See Blitch*, 622 F.3d at 667 (quoting *Skilling vs. United States*, 561 U.S. 358, 386 (2010)) ("Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record-among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty."). Notably, *Blitch* concerned prospective jurors whereas the case before this Court concerns a sworn jury that had heard all of the witness testimony. Therefore, the jurors in *Blitch* would have had no basis to formulate any fears, as no testimony had been tendered. *Id*. at 666. In this case, the jurors not only heard all of the witness testimony, which included acts involving murder, but were also able to observe the defendants' conduct and demeanor, which was stated as a basis for the jurors' safety concerns. *Cf. Id.* at 667 (a defendant can make jurors fearful but no suggestion in the case that the defendants' conduct made jurors uncomfortable).

Accordingly, this Court properly investigated the issue and, based upon the investigation and its observance of the jurors' responses, was satisfied that each juror would follow the Court's instructions and could be fair and impartial.

## CONCLUSION

Therefore, based upon the foregoing, Rentfrow's motion for a new trial should be denied as he has failed to meet his burden of proof justifying a new trial.

11

Respectfully submitted,

DARREN LAMARCA
United States Attorney


By:    */s/Michael FiggsGanter*
       501 East Court Street, Ste. 4.430
       Jackson, MS    39201
       Telephone: (601) 965-4035
       Fax: (601) 973-4480
       NY Bar No. 4409595
       Email: Mike.Figgsganter@usadoj.gov


DAVID L. JAFFE
Chief, Organized Crime and Gang Section

By:    */s/Lakeita F. Rox-Love*
       Lakeita F. Rox-Love
       Organized Crime and Gang Section
       U.S. Department of Justice
       1301 New York Avenue, N.W.
       Washington, D.C.    20530
       Telephone: (202) 307-3345
       Fax: (202) 618-0878
       MS Bar No. 103871
       Email: Lakeita.Rox-Love@usdoj.gov

       */s /Christina Taylor*
       Christina Taylor
       Organized Crime and Gang Section
       U.S. Department of Justice, Criminal
       1301 New York Avenue, N.W.
       Washington, D.C.   20530
       Telephone: (202) 679-1034
       Fax: (202) 618-0878
       MD Bar Number: 0606130048
       Email: Christina.Taylor@usdoj.gov

12

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2022, I electronically filed the foregoing Response with the Clerk of the Court using the Electronic Case Filing System (ECF), which served to send notification of this filing to counsel of record.

This the 7th day of November, 2022.

*/s/Lakeita F. Rox-Love*
Lakeita F. Rox-Love
Trial Attorney

13