# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 21, 2024

Lyle W. Cayce
Clerk

No. 23-60054

_____

United States of America,

*Plaintiff—Appellee,*

*versus*

Aaron Matthew Rentfrow; William Glenn Chunn,

*Defendants—Appellants.*

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:20-CR-128-2

_____

Before Jones, Haynes, and Douglas, *Circuit Judges.*

Per Curiam:[*]

Defendants Aaron Matthew Rentfrow and William Glenn Chunn, who were shown to be members of a white supremacist gang called the Aryan Circle, appeal their convictions related to the attempted murder of a fellow inmate. For the reasons that follow, we AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-60054

# I. Background

The Aryan Circle is a white supremacist gang that began in the Texas state prison system. It now has hundreds of members in and out of American prisons. It recruits violent men, furthers its goals through criminal activity, such as drug trafficking and murder, and seeks to spread throughout the United States.

Chunn was stated to be one of the five upper board members governing the Aryan Circle nationally and the leader of its members at the federal prison in Yazoo City, Mississippi ("USP Yazoo City"), where he was imprisoned at the time of the relevant events. During that same time, Rentfrow was also a prisoner at USP Yazoo City and was said to be an Aryan Circle "prospect." A prospect is a person undergoing a probationary period during which he eventually "put[s] in blood work" (a violent act) to achieve full membership. Once a prospect becomes a full member, he receives an Aryan Circle tattoo, which is referred to as a "patch." The tattoo includes a diamond outline with a swastika inside the diamond and the letters "AC" in the center.

On the date of the relevant events, a new inmate, M.M., transferred into USP Yazoo City. Chunn and Jeremy Dennis, an alleged Aryan Circle member, went to M.M.'s cell to meet him. Afterwards, they allegedly told others that M.M. could not stay on the unit because of their belief that he was homosexual. Aryan Circle members refuse to share prison units with homosexual people, so they conduct acts of violence against such individuals with the goal of forcing the prison administration to remove such individuals from the unit.

At trial, multiple witnesses testified that Rentfrow, at Chunn's behest, stabbed M.M. 13 times (because "A" and "C" are the first and third letters of the alphabet) and physically beat him to earn membership in the Aryan

2

Circle. M.M. survived the attack but sustained life-threatening injuries. One witness testified that, as a result of the attack, he tattooed the Aryan Circle patch onto Rentfrow to display Rentfrow's full membership in the gang. The government also presented to the jury a picture of Rentfrow with an Aryan Circle tattoo. The jury found Rentfrow and Chunn guilty of both counts against them: (1) violent crimes in aid of racketeering ("VICAR") assault with a deadly weapon and assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1959(a)(3) and 2; and (2) VICAR attempted murder, in violation of 18 U.S.C. §§ 1959(a)(5) and 2.[1]  Both Defendants timely appealed.

## II. Jurisdiction & Standards of Review

The district court had jurisdiction over the underlying federal offenses pursuant to 18 U.S.C. § 3231. We have jurisdiction to review the convictions under 28 U.S.C. § 1291.

We review constitutional challenges de novo and evidentiary decisions for abuse of discretion. *United States v. Asibor*, 109 F.3d 1023, 1032, 1037 (5th Cir. 1997). The standard for overturning evidentiary decisions under Federal Rule of Evidence 403 is "especially high and requires a showing of a clear abuse of discretion." *United States v. Curtis*, 635 F.3d 704, 716 (5th Cir. 2011) (internal quotation marks and citation omitted).

"Whenever a courtroom arrangement is challenged as inherently prejudicial, the question" is "whether 'an unacceptable risk is presented of impermissible factors coming into play.'" *Jones v. Davis*, 890 F.3d 559, 567–

---

[1] Given the district court's concern that the two charged offenses were duplicative, the government elected at sentencing to proceed against the defendants only on the VICAR attempted murder count and agreed that the court should vacate the convictions on the other count.

68 (5th Cir. 2018) (quoting *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986)).  We review factual issues raised by that question for clear error and legal conclusions de novo.  *Cf. England v. England*, 234 F.3d 268, 270 (5th Cir. 2000) (stating general rule).  If such a risk existed, we review the district court's balancing of the risk against safety concerns for an abuse of discretion.  *United States v. Nicholson*, 846 F.2d 277, 279 (5th Cir. 1988) (noting that the balancing endeavor "is entrusted to the sound discretion of the trial court").

Finally, "[w]e review a district court's response to juror misconduct for abuse of discretion."  *United States v. Ebron*, 683 F.3d 105, 125 (5th Cir. 2012).  Likewise, the denial of a motion for mistrial is reviewed for abuse of discretion.  *United States v. Nieto*, 721 F.3d 357, 369 (5th Cir. 2013).

## III. Discussion

### A. Cumulative Error

We first consider Rentfrow's challenge to his conviction.

Rentfrow argues that four alleged errors cumulated to deprive him of a fair trial: (1) failing to limit the number of United States Marshals present during a former Aryan Circle member's testimony, (2) permitting testimony that death is a consequence of treason against the Aryan Circle, (3) admitting photographs of an Aryan Circle murder victim, and (4) failing to declare a mistrial after the judge received a juror note expressing fear and indicating that the author of the note had discussed such fear with at least one other juror.  We will address each alleged error in turn before addressing cumulative error.

#### 1. Courtroom Security

We disagree with Rentfrow's assertion that the district court erred by permitting increased security in the courtroom during the testimony of Brandon Fritts, a former Aryan Circle member.  First, the record indicates

that there were only two uniformed troopers present during Fritts's testimony. *Cf. Holbrook*, 475 U.S. at 571 (holding no unacceptable risk of prejudice based on the presence of four uniformed officers). Second, even taking into account the additional plain-clothes officers,[2] there is a "wide[] range of inferences that a juror might reasonably draw" from the presence of the officers (assuming arguendo they even recognized the plain-clothes officers as law enforcement). *See id.* at 569. That is especially true here, where increased security was only present for Fritts's testimony, Fritts admitted to committing murder and other acts of violence on behalf of the Aryan Circle, death is the punishment for treason against the Aryan Circle (which Fritts committed), and the Aryan Circle has many members outside of prison. In sum, the district court did not abuse its discretion.

### 2. Testimony Regarding Consequences of Treason

We also disagree with Rentfrow's contention that the district court abused its discretion by admitting testimony that death is the punishment for treason against the Aryan Circle. Before trial, Chunn filed a motion in limine to prevent the government from "elicit[ing] testimony from any witness that they are scared to testify . . . because of possible repercussions." The government agreed to that restriction but stated that it still intended to offer evidence that "the Aryan Circle does not permit cooperation with law enforcement and such cooperation can have serious repercussions including death." The district court then granted the motion in limine as confessed without expanding the language to preclude the evidence that the government intended to present. We therefore agree with the government that Fritts's testimony did not violate the court's order because he did not

---

[2] The record is unclear, and the parties do not agree on how many plain-clothes officers were present.

say that he was scared to testify due to potential repercussions. In fact, the expansive nature of his testimony, and his statements that he had also testified against the gang in earlier cases, indicate that he was *not* scared to testify.

### 3. Photos of Fritts's Murder Victim

Next, we hold that the district court did not abuse its discretion by admitting two photos of someone whom Fritts had murdered on behalf of the Aryan Circle. We have previously affirmed the admission of "shocking" and "gruesome" photos because they had "nontrivial probative value" in that they helped prove overt acts committed in furtherance of a conspiracy, lent support to testimony, and established the violence of the crimes committed. *United States v. Perry*, 35 F.4th 293, 325–26 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 463 (2022). Here, the photos had nontrivial probative value because they provided evidence of the Aryan Circle's racketeering activity and corroborated Fritts's testimony. *See United States v. Shows Urquidi*, 71 F.4th 357, 374 (5th Cir. 2023) (explaining that photos are not "cumulative" when they "provide[] support to witness testimony"), *cert. denied sub nom. Iglesias-Villegas v. United States*, 144 S. Ct. 268 (2023). Also, without diminishing the heinousness of Fritts's murder, the photos are not overly gruesome. The more graphic of the two photos is taken from a distance, shows two small blood stains on the victim's clothing, and does not show the victim's face. *Cf. Perry*, 35 F.4th at 325 (affirming admission of "shocking" photos depicting dead bodies "with open wounds, blood and gore"). In fact, the district court demonstrated appropriate consideration of the issues by sustaining an objection to a third photo that was described as the most gruesome. We therefore conclude that Rentfrow has failed to establish a

"clear abuse of discretion."[3]    *Curtis*, 635 F.3d at 716 (quotation omitted) (applying Rule 403's heightened standard).

### 4. The Juror's Note

Finally, the district court did not abuse its discretion in its handling of a juror note that expressed fear and indicated that the author of the note had discussed such fear with another juror. *United States v. Nieto* is instructive. 721 F.3d 357 (5th Cir. 2013).  Like the present case, *Nieto* involved jurors expressing anxiety about the case and talking about it to some extent.  *Id.* at 370.  But the alleged misconduct in *Nieto* was more severe than the present case because (1) *several* jurors were involved in the alleged misconduct, and (2) two jurors "indicated they had formed some opinions . . . before closing arguments."  *Id.*    Nonetheless, we held that the district court, after conducting interviews with the jurors, "made a reasonable factual determination from its unique perspective that the remaining jurors could decide the case impartially."[4]  *Id.*  Similarly, the district court in this case conducted a thorough investigation, questioned the jurors about their ability to follow the court's instructions, and received assurance from the jurors that they would be able to fairly evaluate the evidence and follow the court's instructions.  *See id.*    Ultimately, "a district court, based on its unique perspective at the scene, is in a far superior position than we are to appropriately consider allegations of juror misconduct."  *Id.* (quotation omitted).  Thus, we hold that the district court did not abuse its discretion.

### 5. Cumulative Error

---

[3] Because Defendants objected to this evidence under Rule 403, we apply Rule 403's heightened standard of review.

[4] The district court in *Nieto* dismissed one juror who had been extrinsically influenced rather than intrinsically influenced.  721 F.3d at 370.

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (en banc) (alternations adopted) (quotation omitted). Because we have rejected Rentfrow's allegations of error, "and non-errors have no weight in a cumulative error analysis, there is nothing to accumulate. Thus, the cumulative error doctrine has no applicability to [Rentfrow's] allegations of error." *Id.* at 344 (footnote omitted).

In any event, we have "repeatedly emphasized that the cumulative error doctrine necessitates reversal only in rare instances and have previously stated en banc that the possibility of cumulative error is often acknowledged but practically never found persuasive." *Id.* (internal quotation marks, citation, and footnote omitted). "Its application is especially uncommon where . . . the government presents substantial evidence of guilt." *Id.* As the government points out, by the end of trial, Rentfrow's counsel's only remaining contention was that Rentfrow did not attack M.M. for the purpose of promoting his position in a racketeering enterprise. But multiple witnesses testified that Rentfrow attacked M.M. to join the Aryan Circle. On appeal, Rentfrow does not even dispute that the government presented substantial evidence against him on that element. We therefore conclude that even if there were errors, this is not one of the "rare instances" in which the cumulative error doctrine requires reversal, let alone one of the "especially uncommon" instances where the cumulative error doctrine warrants reversal in the face of "substantial evidence of guilt." *See id.*

**B. Confrontation Clause**

We turn next to Chunn's challenge.

8

No. 23-60054

At trial, Andy Atwood testified about a conversation that he had with Rentfrow five months after the attack while they were both in a segregated unit of the prison. Rentfrow allegedly told Atwood that to receive his patch he had to stab M.M. 13 times and that when M.M. started crawling out of his cell, Chunn made Rentfrow go back to "stomp him the rest of the way out."

Chunn argues that the district court violated the Sixth Amendment's Confrontation Clause and *Bruton v. United States*, 391 U.S. 123 (1968)[5] by permitting Atwood's testimony because it introduced a testimonial statement by a co-defendant who did not testify. The government responds that Chunn's argument fails because either (1) the relevant statement was nontestimonial, or (2) the co-conspirator exception applies.

"The Sixth Amendment's Confrontation Clause guarantees the right of a criminal defendant to be confronted with the witnesses against him." *Samia v. United States*, 599 U.S. 635, 643 (2023) (internal quotation marks omitted). "[T]his Clause forbids the introduction of out-of-court 'testimonial' statements unless the witness is unavailable and the defendant has had the chance to cross-examine the witness previously." *Id.* "[T]he basic objective of the Confrontation Clause . . . is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). "Thus, the high Court has adopted the 'primary purpose' test for determining whether a statement is testimonial in nature." *United States v. Noria*, 945 F.3d 847, 851 (5th Cir. 2019). "To qualify as 'testimonial' under this standard, 'a statement must have a primary purpose of establishing or

---

[5] In *Bruton*, the Court held that a trial court denied a defendant his constitutional right of confrontation by admitting witness testimony about a confession made by a co-defendant that implicated both defendants. 391 U.S. at 137.

9

proving past events potentially relevant to later criminal prosecution.'" *Id.* at 851–52 (quoting *Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011)).

Rentfrow recapping the attack to Atwood while they were both in prison does not qualify as a testimonial statement under the primary purpose test.[6] *See United States v. Vasquez*, 766 F.3d 373, 378–79 (5th Cir. 2014) (rejecting on plain error review *Bruton* challenge to jailhouse confession between inmates because it was nontestimonial). Rentfrow's statement to Atwood in prison was not "taken for use at trial." *Bryant*, 562 U.S. at 358. Even the Supreme Court has classified "statements from one prisoner to another" as "clearly nontestimonial." *Davis v. Washington*, 547 U.S. 813, 825 (2006) (providing examples of nontestimonial statements). We therefore hold that permitting Atwood to testify to Rentfrow's statement did not violate the Confrontation Clause.

## IV. Conclusion

For the reasons explained above, we AFFIRM the convictions of both Defendants.

---

[6] Contrary to Chunn's assertion, the government has not waived its argument that the relevant statement was nontestimonial. The Supreme Court has explained that "without filing a cross-appeal or cross-petition, an appellee may rely upon any matter appearing in the record in support of the judgment below." *Schweiker v. Hogan*, 457 U.S. 569, 585 n.24 (1982) (quotation omitted). Moreover, we have accepted an appellee's argument for the first time on appeal where, like here, it was "fully briefed by both sides," could be decided on the basis of the record below, and "support[ed] a straight-forward affirmance of the district court's judgment." *Ford-Evans v. United Space All. LLC*, 329 F. App'x 519, 524 (5th Cir. 2009) (per curiam). Finally, the government's position on appeal is not inconsistent with its position in the district court and does not seek to enlarge its rights under the district court's ruling. *See id.* at 524 n.1, 525 n.2 (explaining that appellees cannot raise new arguments on appeal in such circumstances).